UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 19 C 7626 |
| ) | |
| ) | Chief Judge Rebecca R. Pallmeyer |
| NASEEM AKHTER ) | |
| a/k/a Nasem Akhtar, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Naseem Akhter became a naturalized American citizen in December 2009. In this action under 8 U.S.C. § 1451(a), filed on November 19, 2019. the United States seeks to revoke the order admitting Defendant Akhter to U.S. citizenship and to cancel Akhter's Certificate of Naturalization. Akhter responded to the complaint with an answer that asserts six purported affirmative defenses. The government moves to strike these defenses and, for the reasons stated here, the motion is granted in part and denied in part, without prejudice to the court's consideration of Mr. Akhter's substantive arguments: that he was unaware of the entry of an *in absentia* removal order at the time he sought adjustment to his status, and that any inconsistencies in his asylum application were immaterial to his obtainment of lawful permanent residency status and, subsequently, citizenship.

## BACKGROUND

In June 1997, Naseem Akhter, a native of Pakistan, filed Form I-589, "Application for Asylum and for Withholding of Deportation" ("asylum application") with the Immigration and Naturalization Service ("INS"). (Compl. [1] ¶ 8.) The Government alleges that Akhter filed his application using the name Nasem Akhtar. Akhter admits that he filed an asylum application, but denies ever using the name Nasem Akhtar. (Answer [7] ¶ 8.) On July 7, 1997, the Government alleges Akhter met with an INS official for an interview in support of his application; Akhter admits

1

this, as well, but denies having received notice of the interview in the mail. (*Id.* ¶ 12.) Days later, on July 16, 1997, the INS referred Akhter's asylum application to the immigration court, which, on July 28, 1997, issued and mailed a Form I-862 Notice to Appear, initiating removal proceedings against Akhter on the ground that he was an alien present in the United States without authorization. (Compl. ¶ 15.) The Government asserts it mailed the Notice to the same address to which it had sent notice of the asylum interview. (*Id.* ¶ 16.) Akhter, who denied having received a mailed notice of the interview, alleges that he "was not aware" of the removal proceedings. (Answer ¶ 17.) He did not appear at the September 8, 1997 removal hearing and was subsequently ordered removed *in absentia*. (Compl. ¶ 17.)

Mr. Akhter did not leave the country. On October 10, 1997, Joan Torres filed a Form I-130, "Petition for Alien Relative" ("visa petition"), and a Form I-485, "Application to Register Permanent Residence or Adjust Status" ("adjustment application"), on behalf of Mr. Akhter, asserting that she had married him on September 23, 1997 and that he had never been the subject of an exclusion or deportation proceeding. (Compl. ¶ 20.) Akhter contends that in October 1997 he was unaware of any deportation or removal orders. (Answer ¶ 22.) It appears there was no action on the 1997 petition and application, and that the marriage to Ms. Torres did not last. On April 11, 2000, Christina Akhter, who had married Mr. Akhter, submitted another Form I-130 visa petition and another Form I-485 application for adjustment on his behalf. (Compl. ¶ 27.) On January 16, 2002, INS approved Mr. Akhter's second adjustment application. (*Id.* ¶ 35.) The Government alleges it did so "after previously denying Defendant's first adjustment application"; it does not say when that earlier denial occurred. (*Id.*)

Seven years passed. On September 10, 2009, U.S. Citizenship and Immigration Services ("USCIS"), successor to INS, received a Form N-400, "Application for Naturalization" ("naturalization application"), filed by Mr. Akhter. (*Id.* ¶ 36.) On December 16, 2009, Akhter was interviewed by USCIS, answered questions and signed the application under oath. (*Id.* ¶¶ 50,

2

51.)  USCIS approved his naturalization application, and on December 21, 2009, Akhter was admitted to U.S. citizenship.  (*Id.* ¶¶ 52, 53.)

In this action, filed last year, the Government seeks to strip Akhter of his citizenship. The Government alleges that each of the immigration-related forms filed by or on behalf of Mr. Akhter, subsequent to his initial 1997 asylum application, contains factual information that is inconsistent with that first application.  This alleged conflicting information includes, *inter alia*, his name (Nasem Akhtar vs. Naseem Akhter), date of birth (July 1972 vs. July 1970), and the date, place, and manner of his entry into the United States.  The inconsistencies are alleged only as compared to the 1997 asylum application, not as compared among any of the various subsequent forms filed between 1997 and 2009.

Akhter has filed an answer in which he denies having concealed material facts or made any willful misrepresentations.  He has presented this central argument, and others, by way of five affirmative defenses[1]:  (1) the court lacks jurisdiction under 8 U.S.C. § 1451(a); (2) the court lacks jurisdiction under 28 U.S.C. § 1331; (3) the claims are barred by estoppel and laches; (4) Akhter was unaware of the removal order when he filed for adjustment of status and naturalization; and (5) the alleged false statements would not preclude an award of citizenship. The Government now moves to strike those defenses, arguing that each is insufficient as a matter of law.

## DISCUSSION

The court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f).  "As a general rule, motions to strike are disfavored and rarely granted because striking a portion of a pleading is a drastic remedy and because it often is sought by the movant simply as a dilatory or harassing tactic." *Meridian Sec.*

---

[1] A sixth Affirmative Defense simply sets forth Mr. Akhter's responses to the individual allegations of the complaint.

3

*Ins. Co. v. Roberts*, No. 19-CV-00884, 2020 WL 1065465, at *1 (S.D. Ill. Mar. 5, 2020) (citing *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989)). Accordingly, "[a]ffirmative defenses will be stricken only when they are insufficient on the face of the pleadings." *Heller Fin*, 883 F.2d at 1294.

As noted, Akhter has asserted five purported defenses. The parties' briefs devote much of their attention to just one: the third affirmative defense, in which Akhter contends the complaint is barred by the doctrines of laches and estoppel. The court agrees that the remaining defenses require little discussion.

### A. First and Second Defenses

The contention that the court lacks jurisdiction to hear this case is a non-starter: A district court has jurisdiction to hear civil cases brought by the United States, 28 U.S.C. § 1345, and has specific jurisdiction to consider a claim for revocation of a certificate of naturalization. 8 U.S.C. § 1451(a). *See United States v. Kumpf*, 438 F.3d 785, 788 (7th Cir. 2006) (citing *United States v. Wittje*, 422 F.3d 479, 485–86 (7th Cir. 2005)). The motion to strike those defenses is granted.

### B. Fourth and Fifth Defenses

Akhter's assertions that he was unaware of the removal order when he applied for adjustment of his status, and that the alleged false statements would not have been a basis for denial of citizenship, are, at root, an argument that the government cannot meet its burden under § 1451(a), which requires a showing that citizenship was "procured by concealment of a *material* fact or by *willful* misrepresentation." *See* 8 U.S.C. § 1451(a) (emphasis supplied). As explained in *Kungys v. United States*, 485 U.S. 759 (1988), the Government may seek denaturalization on the basis of concealments or misrepresentations only if those misrepresentations are both willful and material. A "concealment or misrepresentation is material if it 'has a natural tendency to influence, or was capable of influencing, the decision of' the decisionmaking body to which it was addressed." 485 U.S. at 770. As this court understands Akhter's position, he contends that his alleged false statements were not significant enough to have influenced the INS. Although this

4

contention need not be included in a defense, it is hardly impertinent or scandalous. The court concludes an order striking those defenses is unwarranted.[2]

### C. Third Defense

That leaves, for the court's consideration, only the third affirmative defense, in which Mr. Akhter invokes laches and estoppel. To apply equitable estoppel against a party, the following four elements must be satisfied: "(1) the party to be estopped knows the facts; (2) that party intended for his conduct to be acted upon or acted in such a manner that the party asserting estoppel had a right to believe he intended as such; (3) the party asserting estoppel was ignorant of the facts; and (4) the party asserting estoppel reasonably relied on the other's conduct to his substantial injury." *Matamoros v. Grams*, 706 F.3d 783, 793 (7th Cir. 2013) (citations omitted). A party asserting estoppel against the government must further demonstrate "affirmative misconduct." *Id.* (quoting *Solis–Chavez v. Holder*, 662 F.3d 462, 471–72 (7th Cir.2011)). To establish a laches defense, an alien "must show the government's lack of diligence and resulting prejudice." *United States v. Valenzuela*, 931 F.3d 605, 608 (7th Cir. 2019) (citation omitted).

#### 1. Estoppel

The court notes, initially, that Defendant has not identified, even in general terms, the circumstances that might support such a defense. The Seventh Circuit has yet to decide whether the heightened *Twombly/Iqbal* standard applies to affirmative defenses, *Sarkis' Café, Inc. v. Sarks in the Park, LLC*, 55 F. Supp. 3d 1034, 1040 (N.D. Ill. 2014), but a number of district courts have suggested it does. *See Maui Jim, Inc. v. SmartBuy Guru Enters.*, 386 F. Supp. 3d 926, .937–38 (N.D. Ill. 2019) (collecting cases). In any event, even if the pleading standards for an affirmative

---

[2] Akhter's fourth and fifth defenses may be understood as "negative defenses" rather than "affirmative defenses." As discussed in text, these defenses are, effectively, denials of the Government's claim for relief. The court recognizes that a "negative defense" is not prohibited by Rule 8. *See Kohler v. Islands Restaurants, LP*, 280 F.R.D. 560, 567 (S.D. Cal. 2012) (citing FED. R. CIV. P. 8(b)); *Rexel USA, Inc. v. Bragg*, No. 19 CV 35, 2019 WL 8301697, at *1 (S.D. Ind. Oct. 24, 2019) (citing Rule 8(c)); *see also* Amy St. Eve & Michael A. Zuckerman, The Forgotten Pleading, 7 FED. CTS. L. REV. 152, 167 (2013).

defense do not match those that govern complaints, this court would expect Akhter to identify facts that, in his view, would support such defenses.[3] He has not done so.

Whatever factual allegations may be made in support of these defenses, the Government argues that they fail as a matter of law. In support, the Government cites *Fedorenko v. United States*, 449 U.S. 490, 516–18 (1981), where the Court held that when the Government has met its burden to show that a naturalized citizen procured citizenship illegally or by willful misrepresentation of material facts, the district court has no "equitable discretion to refrain from entering a judgment of denaturalization." Significantly, the *Fedorenko* Court was not addressing equitable *defenses*; the words "defense," "estoppel," or "laches" do not appear anywhere in the opinion. Instead, in *Fedorenko*, the district court had construed the denaturalization statute to allow an inherent degree of equitable discretion; it held that it could deny the government's request for denaturalization on equitable grounds "even if the defendant was guilty of making material misstatements and omissions." *United States v. Fedorenko*, 597 F.2d 946, 948 (5th Cir. 1979).

In this case, the Government argues that the Supreme Court's rejection of that conclusion precludes a defendant in a denaturalization case from invoking any equitable defense. Indeed, the parties have not identified, nor has this court found, any case in which laches or estoppel operated to defeat a denaturalization case. *See also Gutierrez v. Gonzales*, 458 F.3d 688, 691 (7th Cir. 2006) (observing, in a challenge to removal proceedings, that "The Supreme Court has never affirmed a finding of estoppel against the government. And that is not for lack of review. The Court, in fact, has 'reversed every finding of estoppel that [it has] reviewed.' "), *cited in*

---

[3] Does he contend that the government had constructive knowledge of the 1997 removal proceeding but nonetheless processed his citizenship application? Gave false assurances about his submissions? Do his defenses rest solely on the passage of time? How has he been prejudiced? Akhter hints at the answer to some of these questions in his response brief. He contends there that he "did not receive proper notice of this deportation proceeding," and that "when he applied for citizenship . . . he should have been informed he had an *in absentia* removal order." (Akhter's Response Memo [19] at 4. 6.) The court expresses no views on whether those allegations are adequate to support a defense, but notes that they do not appear in Akhter's answer.

*Matamoros v. Grams*, 706 F.3d 783 (7th Cir. 2013); *Savoury v. United States Att'y Gen.*, 449 F.3d 1307, 1318 (11th Cir. 2006) ("The Supreme Court has specifically declined to apply estoppel against the government in several cases in the immigration context.") (collecting cases). Some courts appear to have closed the door on any laches defense in a case seeking denaturalization.[4]

Other courts, however, including those cited by the Government (Mot. to Strike [11] at 2 n.1), have not drawn such a bright line barring equitable defenses in immigration cases. In *Mudric v. Att'y Gen. of U.S.*, 469 F.3d 94, 99 (3d Cir. 2006), the Third Circuit explicitly noted, "we acknowledge that the doctrine of equitable estoppel can apply to the government in the immigration context," but held that the elements were not met in that case, where plaintiff sought review of a deportation order. Similarly, affirming denial of application for naturalization in *Turfah v. USCIS*, 845 F.3d 668 (6th Cir. 2017) the Sixth Circuit noted, "the Supreme Court has held that the government cannot be estopped from denying naturalization *unless* the government has committed 'affirmative misconduct' during the alien's application process," and that the petitioner there had not made such a showing. 845 F.3d at 675 (emphasis added). In *Schwebel v. Crandall*, 967 F.3d 96 (2d Cir. 2020), a German citizen and long-time resident of the United States successfully challenged the denial of her application for lawful permanent resident status. Affirming that ruling, the Second Circuit observed that, in "exceptional circumstances," such as those in the case before it, the court would apply "equitable estoppel in the immigration context to remedy 'unintentional injustices' imposed 'upon the naive albeit honest alien who is understandably unfamiliar with the labyrinthine intricacies of our immigration laws.'" 967 F.3d at 103 (citing *Corniel-Rodriguez v. INS*, 532 F.2d 301, 304 (2d Cir. 1976)). The Ninth Circuit, too, has recognized that "[t]he government in immigration cases may be subject to equitable estoppel

---

[4] *See, e.g., United States v. Mandycz*, 447 F.3d 951, 965 (6th Cir. 2006) ("[T]he 'primary holding' of *Costello*, we have already decided, is that 'laches [is] inapplicable.' ") (quoting *United States v. Weintraub*, 613 F.2d 612, 618–19 (6th Cir.1979)); *United States v. Wang*, 404 F. Supp. 2d 1155, 1158–59 (N.D. Cal. 2005); *United States v. Schuk*, 565 F. Supp. 613, 615 (E.D. Pa. 1983).

if it has engaged in affirmative misconduct." *Salgado-Diaz v. Gonzales*, 395 F.3d 1158, 1165 (9th Cir. 2005), *opinion amended on reconsideration*, No. 02-74187, 2005 WL 553046 (9th Cir. Mar. 10, 2005). The Seventh Circuit has held that "to estop the government, the party must also show that the government committed affirmative misconduct," and has never read *Fedorenko* to limit this principle in the context of denaturalization. *Turkhan v. Lynch*, 836 F.3d 843, 848 (7th Cir. 2016) (quoting *United States v. Anaya–Aguirre*, 704 F.3d 514, 520 (7th Cir. 2013)) (recognizing estoppel in a removal context).

### 2. Laches

Courts likewise have not read *Fedorenko* as barring a laches defense to a denaturalization action as a matter of law. Instead, courts have treated the question as an open issue, and decided cases on the basis that the individual fighting denaturalization is unable to establish the factual elements of laches. Thus, in *United States v. Kairys*, 782 F.2d 1374, 1384 (7th Cir. 1985), the Seventh Circuit specifically declined to reach the issue of whether laches could bar a denaturalization action because it concluded that the defendant in that case had not established the requirements of laches: specifically, a showing of lack of diligence on the part of the Government, and prejudice on the part of defendant. *Kairys* cited *Costello v. United States*, 365 U.S. 265 (1961), where the Supreme Court observed that lower courts had refused to recognize laches as a defense in denaturalization proceedings, but declined to reach the issue because the facts did not support such a defense. 365 U.S. at 283–84 ("Depriving him of his fraudulently acquired privilege, even after the lapse of many years, is not so unreasonable as to constitute a denial of due process."); *see also United States v. Valenzuela*, 931 F.3d 605, 609 (7th Cir. 2019) (declining to adopt a categorical rule that laches never applies in civil denaturalization cases). *accord United States v. Dang*, 488 F.3d 1135, 1144 (9th Cir. 2007) ("assuming that laches is a permissible defense, Dang did not make out the required elements of the defense"); *United States v. Lemos*, No. 08 Civ. 11144 (KMW), 2010 WL 1192095, *2–3 (S.D.N.Y. Mar. 26, 2010) (holding that the Supreme Court left open the question of whether laches can ever bar a denaturalization

action, but stating that it would be "difficult for a defendant who had obtained his citizenship through fraud to establish prejudice on the ground that he changed his position as a result of the Government's delay in pursuing denaturalization").

The case before this court has not progressed beyond the pleading stage. The Government has not yet been given the opportunity to meet the "heavy burden" of establishing by "clear, unequivocal, and convincing evidence" that Akhter's citizenship was illegally procured within the meaning of 8 U.S.C. § 1451(a) and should be revoked. *Fedorenko,* 449 U.S. at 505 (citing *Costello,* 365 U.S. at 269, and *Schneiderman v. United States*, 320 U.S. 118, 125 (1943)). Nor has Akhter been able to identify or prove circumstances that might support a laches or estoppel defense. On a full factual record, the court may well conclude that the facts do not support an such equitable defense to denaturalization. For now, the court concludes only that such defenses are not barred as a matter of law.

## **CONCLUSION**

The Government's motion to strike affirmative defenses [11] is granted with respect to the first, second, and third affirmative defenses and otherwise denied. Akhter has leave to re-file his third affirmative defense within 21 days, to include a brief description of the facts in support of any claim of estoppel or laches.

ENTER:

Date:   December 8, 2020

REBECCA R. PALLMEYER
United States District Judge